## No. 8242.

### UNDERWRITERS' WRECKING COMPANY VS. THE BOARD OF UNDERWRITERS ET ALS.

An agent or debtor who is instructed by his principal or creditor to remit, without indicating any particular mode of remittance, and who does remit in the customary mode, is not responsible further.

If the same care, prudence, and judgment is exercised in purchasing a Bill of Exchange for a remittance, as a prudent business man uses in the conduct of his own affairs, the unexpected failure of the banking house drawing the Bill, before it can be presented, will entail no responsibility on the purchaser of the Bill.

The payee of a bill is estopped from holding its agents or debtor, who purchased it under instructions, responsible, after he has elected to treat the bill as his own and received a dividend upon it.

APPEAL from the Civil District Court for the Parish of Orleans. Lazarus, J.

---

*Singleton & Browne* for Plaintiff and Appellee.

*Leovy & Kruttschnitt, H. C. Miller, T. Gilmore & Sons*, and *Merrick, Foster & Merrick* for Defendants and Appellants.

---

The opinion of the Court was delivered by

MANNING, J. The plaintiff claims a solidary judgment against the

Board of Underwriters, and thirteen insurance companies composing that Board, for $7,381.35 with interest, for salvage of the cargo of the Steamboat " Golden Rule."

The allegations are that these insurance companies united in establishing the association known as the Board of Underwriters, whose duties are to do whatever is necessary to save property insured by any of the companies, and to dispose of it when saved for their interest—that some of the companies were insurers upon the cargo of the " Golden Rule," a steamboat which was lost, and that the plaintiff was the salvor of part of it, and consigned it to the defendant Board, who sold it, and for payment of plaintiff's salvage remitted to it a cheque of Pike, Brother & Co. on the Hanover National Bank of New York for $9,227.01 to the order of George W. Neare, which was presented, payment demanded and refused, and protest and notice duly made, and that afterwards the drawers paid twenty per cent. of this cheque, and this suit is for the residue.

The answer denies that the Board of Underwriters is a corporation, or judicial person of any sort, but avers that it is an association formed by insurers to prevent or lessen the losses from river or marine accidents or other causes, and that when the Golden Rule was wrecked, George W. Neare, an agent of the plaintiff, went to the wreck, superintended the salvage services, shipped the property that was saved, and drew upon the proceeds, and that finally upon striking the balance of all salvages up to October 17, 1877, the remittance was made to Neare for the sum due the plaintiff—that the remittance was made at plaintiff's request, no special manner having been designated, and in the customary manner. A bill of Pike, Brother & Co., a banking house in good repute in New Orleans, on a Bank of New York, was bought, which bill was received by the plaintiff, and a portion thereof collected by it, and afterwards the plaintiff receipted in full for the balance of salvage due it by the Board of Underwriters without any reservation as to this draft.

Pike, Brother & Co. failed October 19th, while their cheque on the New York Bank was *en route.*

The testimony satisfactorily establishes that Neare's presence and services at the wreck was as agent of the plaintiff, that the saved property was shipped to this City to be sold for the parties in interest, and the plaintiff's salvage was dependent upon and apportioned to the amount of the sale. The defendant Board did not occupy the position of debtor to the plaintiff, nor did the insurance companies. The correspondence of the parties shews that was the mutual understanding of the parties.

But if it were otherwise, and the relation of debtor and creditor existed between them, the salvage was due at New Orleans where the cargo was sent for sale. So far from demanding payment here, the plaintiff instructed the defendant to remit, and if in remitting the defendant observed the same care, diligence, and good judgment as in its own business, and the remittance was made in the customary manner, it was at the risk of the plaintiff.

On October 17, 1877, when the Bill of Exchange was bought of Pike, Brother & Co., they were in good credit. No suspicion of their tottering condition was felt in commercial circles. The defendants' faith in their solvency was as complete as at any time of their existence as a banking house. The defendant had a large sum of money in their hands at the time of their failure. The crash came two days after the purchase of the Bill. The remittance was made under instructions, without indicating any particular mode of remittance. It was made in the usual mode; and with the same care and diligence that a prudent business man exercises in his own affairs. No more can be expected, or is required, of the debtor, and having done that much, the defendant is discharged. Brooking vs. Wade, 3 Mart. N. S. 513; 1 Daniel Negot. Instr. 237.

The plaintiff insists that the Bill, remitted to Neare and drawn in his favor, was without authority, Neare not being its agent. We have already stated that Neare was the agent of the plaintiff in saving the cargo. If not agent for the collection and receipt of the salvage money, the plaintiff treated the Bill as properly drawn by receiving twenty per cent. of its amount afterwards from the Banking House, collected for the plaintiff by the defendant.

The plaintiff at first threatened to sue the defendant, but afterwards elected to treat the Bill as its property, and accepted a partial payment from the drawers. The suit is only for the balance. The plaintiff is thus estopped from holding the party who bought the bill for them, whether in buying he acted as agent or debtor. Bigelow's Estoppel, 578 et seq.

It is therefore ordered and decreed that the judgment of the lower court is avoided and reversed, and that there be now judgment in favor of the defendants, rejecting the plaintiff's demand, and for costs.

Rehearing refused.